Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael J. Ellis
Assistant United States Attorney
Post Office Box 1494
Spokane, Washington 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>BENJAMIN D. CLIETT,<br><br>            Defendant. | Case No. 1:22-CR-02111-MKD<br><br>GOVERNMENT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Michael J. Ellis, Assistant United States Attorney, respectfully submits that the Government has reviewed the draft Presentence Investigation Report, ECF No. 174.

As forecast in the Plea Agreement, *see* ECF No. 169 at 9, the Government believes that the Defendant's conduct merits a two (2) level enhancement under U.S.S.G. § 3C1.1. The Government accordingly objects to paragraphs 23 and 31 of the draft Presentence Investigation Report. *See* ECF No. 174 at ¶¶ 23, 31.

In the Ninth Circuit, "clear and convincing evidence is not required for factual findings under the Guidelines, even when potentially large enhancements are at stake; fact-finding by a preponderance of the evidence is sufficient to satisfy due process at sentencing." *See United States v. Lucas*, 101 F.4th 1158, 1163 (9th Cir. 2024); *see also United States v. Kilby*, 443 F.3d 1135, 1141 (9th Cir. 2006) ("defining a

GOVERNMENT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT - 1

preponderance of the evidence as 'more likely than not'"). Further, "courts may consider hearsay at sentencing." *See United States v. Petty*, 982 F.2d 1365, 1367 (9th Cir. 1993) (citing *Williams v. New York*, 337 U.S. 241 (1949)); Fed. R. Evid. 1101(d)(3). While "[d]ue process requires that hearsay bear some minimal indicia of reliability in order to be considered at sentencing," "[t]he Confrontation Clause does not apply at sentencing to preclude a court from considering hearsay evidence." *See Petty*, 982 F.2d at 1370. "The defendant typically has the burden to show that disputed hearsay is false or unreliable." *See United States v. Franklin*, 18 F.4th 1105, 1114 (9th Cir. 2021) (citing *United States v. Kimball*, 975 F.2d 563, 567 (9th Cir. 1992)).

Under § 3C1.1, a two-level increase in the offense level is appropriate "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct of impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." *See* U.S.S.G. § 3C1.1. Such conduct can include "committing, suborning, or attempting to suborn perjury." *See* U.S.S.G. § 3C1.1 cmt. n.4(A).

While "inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice," *see* U.S.S.G. § 3C1.1 cmt. n.2, the Defendant's testimony was – at times – so thoroughly fantastical and contrary to other established evidence that an obstruction enhancement is appropriate. The Government highlights the following:

1. The Government presented evidence, *see* Exhibit 73, and the Defendant admitted that he had redeemed one firearm – a PWA Commando rifle – found inside the gun safe from a Yakima pawn shop. *See* Transcript, July 30, 2024, Trial Day 2, at 286–87. The Defendant testified that he had put the gun in a closet, not the safe. *See id.* at 288. Having testified that the written combination

1. for the safe had gone missing, *see id.* at 284, the Defendant testified that (1) he had returned from a family trip to Tacoma to see a concert in 2019; (2) upon his return home the safe was open; (3) his mother-in-law had been left to watch the house; (4) the safe was – at that point – very difficult to access; and (5) the Defendant became "very irate" at finding the safe opened and slammed it shut without looking inside. *See id.* at 289–92; *See* Transcript, July 31, 2024, Trial Day 3, at 43–44, 48–55. The Defendant testified that his mother-in-law must have found the rifle in the closet, found the missing written combination for the safe, opened the safe that was so difficult to operate that the Defendant could not work the mechanism, put the rifle in the safe, and leave the safe open. *See id.* The Defendant never confronted his mother-in-law about allegedly opening the safe or bothered to ask her for the combination despite testifying that he wished he had not closed the safe so he could sell the firearms. *See* Transcript, July 30, 2024, Trial Day 2, at 293; Transcript, July 31, 2024, Trial Day 3, at 54–55.

2. The Defendant testified that, when he went to his house on July 23, 2022, he did not know that A.K. – the Defendant's intimate partner who the Defendant was prohibited from contacting – was in the house. *See* Transcript, July 30, 2024, Trial Day 2, at 300. The Defendant testified that he had parked down the street so the neighbor would not get the wrong idea seeing the Defendant's truck outside. *See* Transcript, July 31, 2024, Trial Day 3, at 59. The Defendant testified that he "got something to eat, got ready to take a shower, ended up passing out in the bed." *See* Transcript, July 30, 2024, Trial Day 2, at 301. The Defendant was wearing a pair of basketball shorts without a shirt, shoes, socks, or underwear. *See id.*; Transcript, July 31, 2024, Trial Day 3, at 60. The Defendant only realized that A.K. was present when she woke him up telling him that the police were at the house. *See* Transcript, July 30, 2024, Trial

GOVERNMENT'S OBJECTION TO PRESENCE INVESTIGATION REPORT - 3

Day 2, at 302. A.K. was naked. *See* Transcript, July 31, 2024, Trial Day 3, at 61.

First, the Defendant's tale of how the PWA Commando rifle may have gotten in the safe is simply too far-fetched to be rendered credible by a reasonable person. What happened is obvious: the Defendant redeemed the rifle from the pawn shop, brought it home, and put it in the safe. The Defendant's story – requiring leap after leap concerning how his mother-in-law found the missing combination, found the hidden rifle, unlocked the unlockable safe – is unbelievable. The story was a sham designed to reduce the damage to the Defendant's case from the Government's strongest evidence – the pawn redemption form personally signed by the Defendant. Further, this was no mere mistake or misremembering: the Defendant concocted an alternate explanation to the obvious negative inferences drawn from the Government's evidence. As the Court can find by a preponderance of the evidence that the Defendant's story concerning his mother-in-law was a willful attempt to perpetrate a fraud on the jury, the Defendant's attempt to obstruct his trial justifies a two-level enhancement.

Separately, the Defendant's testimony that he only realized A.K. was in the home when she woke him up was not only unbelievable but rebutted by other evidence. The Defendant parked down the street. Why? Groceries had been left to melt and spoil in the Yakima summer heat. *See* Transcript, July 30, 2024, Trial Day 2, at 67. Why? The Defendant and A.K. were either naked or partially clothed. Why? The crying and growling heard by police outside the residence stopped when law enforcement made their presence known. *See id.* at 66, 68. Why?

Law enforcement had been summoned to the residence by a neighbor who reported hearing screaming from across the street and over the sound of his TV. *See* Exhibit 118. The neighbor had previously testified during a suppression hearing that he had "heard a woman screaming, my wife and I heard her screaming. We even heard her screaming through our house that we had the door closed, TV on, and we

GOVERNMENT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT - 4

could hear her screaming. Went outside to investigate and still heard her screaming, and it went on for quite some time." *See* Transcript, August 30, 2023, Suppression Hearing, at 13–14.

Again, what is more likely than not? That the Defendant did not hear the screams that drove the neighbor to call 911? That A.K. was making the crying and growling noises entirely separate from anything the Defendant was doing? That A.K. was allowing groceries to spoil outside the residence for some unknown reason unrelated to contact with the Defendant? As with the Defendant's story concerning the PWA Commando, the Defendant's testimony that he did not realize A.K. was there until she woke him up is not credible. The Court should – as above – find by a preponderance of the evidence that the Defendant attempted to obstruct justice by minimizing his misconduct and apply a two-level enhancement.

The Government accordingly also objects to the sentencing guideline calculations in paragraph 35 and at page 20. With an additional two-levels for attempting to obstruct justice, the Defendant's total offense level is 18.[1] Coupled with

//
//
//
//
//

---

[1] Although a defendant typically loses a two-level reduction for acceptance of responsibility if the defendant "puts the government to its burden of proof at trial by denying the essential factual elements of guilt" or is subject to an obstruction enhancement under § 3C1.1, *see* U.S.S.G. § 3E1.1 cmt. n.2, 4, the Government nonetheless moves for a two-level reduction as the Defendant's plea of guilty has spared the Government and the public the expense of a second trial. The Government will not, however, move for the additional one-level decrease as the Government was not able to "avoid preparing for trial and . . . allocate . . . resources efficiently." *See* U.S.S.G. § 3E1.1(b).

GOVERNMENT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT - 5

the Defendant's Criminal History Category of II, the Defendant's guideline range is 30-37 months.

Dated: February 7, 2025.

                                      Vanessa R. Waldref
                                      United States Attorney

                                      *s/Michael J. Ellis*
                                      Michael J. Ellis
                                      Assistant United States Attorney

GOVERNMENT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT - 6

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Nick Mirr

*s/ Michael J. Ellis*
Michael J. Ellis
Assistant United States Attorney

GOVERNMENT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT - 7