

Nick Mirr
Federal Defenders of Eastern Washington and Idaho
306 E. Chestnut Ave.
Yakima, Washington 98901
509.248.8920
Attorney for Benjamin D. Cliett

United States District Court
Eastern District of Washington
Honorable Mary K. Dimke

| | |
|---|---|
| United States,<br><br>    Plaintiff,<br><br> v.<br><br>Benjamin D. Cliett,<br><br>    Defendant. | No. 1:22-CR-2111-MKD<br><br>Memorandum in Support of Sentencing<br><br><br>March 10, 2025 – 11:00 a.m.<br>Yakima—With Argument |

## I. Introduction

Benjamin D. Cliett respectfully submits this memorandum in aid of his sentencing, which is scheduled for March 10, 2025, in Yakima. Mr. Cliett comes before the Court having pleaded guilty to one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(8).[1] As calculated by the United States Probation Office (USPO), the Guidelines recommend a sentence of 24-30 months, followed by a term of supervised release of one (1) to three (3) years.[2] Per the plea agreement, the Government has requested a sentence of 27 months.[3] Mr. Cliett asks instead for the Court to impose a sentence as follows:

1) A 60-month term of probation; and

2) A $100 special penalty assessment.

## II. Discussion

**A.   Base Offense Level and Enhancements**

As discussed in Mr. Cliett's separately filed PSR Objections,[4] Mr. Cliett had no substantive objections to his guideline calculations. He objects, however, to the

---

[1] ECF No. 170 (Order Accepting Guilty Plea)
[2] ECF No. 174 (Draft PSIR) at ¶188.
[3] ECF No. 177 (Gov't Sentencing Memo).
[4] ECF No. 84 (Objection to PSIR).

Sentencing Memorandum
– 1 –

Government's argument that a two (2) level enhancement should be applied pursuant to U.S.S.G. § 3C1.1.[5]

Mr. Cliett does not agree with the government's representations in their filed PSR objections. He has been consistent in his statements since the outset of this case—he did not know the combination to the safe at the time he was found in the home nor was he aware Ms. Keller was home until he woke up. To be clear, Mr. Cliett has pleaded guilty and accepts responsibility for his conduct; he accepts that he was in constructive possession of the firearm, regardless of whether he could have himself opened the safe on that date. That said, nothing about Mr. Cliett's decision to testify should be used to enhance his guideline range.

This is not a situation where Mr. Cliett was found guilty after electing to testify. In that case, the Court would be well positioned to make a determination that the jury did not credit his testimony—that they necessarily believed he was being untruthful. Rather, Mr. Cliett elected to plead guilty after a mistrial where the jury could not reach a unanimous verdict. Here, there was no implicit finding that he was untruthful. The government argues in its objection that Mr. Cliett's testimony was "fantastical" and therefore not credible, yet there still has been no showing that he *willfully* obstructed the prosecution. The government merely argues that it does not believe Mr. Cliett's

---

[5] ECF No. 177 (Gov't Objections to PSR).

testimony. The lynchpin of the government's argument was a pawn redemption form that predated the offense conduct by nearly *four* (4) years. It appears to argue that this fact necessitates a finding that Mr. Cliett perjured himself. Not so. It is possible both that Mr. Cliett testified truthfully and is still guilty of the offense due to his constructive possession of the safe's contents. As such, because there has been no showing that Mr. Cliett willfully committed perjury, this Court should decline to impose the two-level upward enhancement.

**B.    Departures**

Mr. Cliett does not seek any departures.

**C.    18 U.S.C. § 3553(a)**

In imposing a sentence, the Court is required to undertake an individualized assessment of Mr. Cliett and to "impose a sentence sufficient, *but not greater than necessary*"[6] to accomplish the goals laid out in 18 U.S.C. § 3553. As the Supreme Court observed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an *individual* and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment."[7] The human failings at issue here are clear—Mr. Cliett has lived an unstable life marked by spurts of poor decision making. That said, he has

---

[6] 18 U.S.C. § 3553(a) (emphasis added).
[7] *Gall v. United States*, 552 U.S. 38, 52 (emphasis added)(quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)).

also largely avoided any criminal conduct, and this case marks his first felony conviction. His performance on pretrial release is proof positive that the criminal legal system's intervention in his life has had the desired effect. He has remained in perfect compliance, worked steadily, and taken steps to put this tumultuous chapter in his life behind him.

Accordingly, Mr. Cliett respectfully submits that, after a consideration of the 3553(a) factors, a sentence of 60 months' probation is sufficient but not greater than necessary to comply with the 3553(a) factors and ensures our community remains safe, all while acknowledging the seriousness of the crime to which Mr. Cliett pleaded guilty. The reasons why are explained below.

*Mr. Cliett's history and characteristics*

Mr. Cliett, outside of the events directly surrounding this offense, has lived a quiet and largely unremarkable life. His parents separated when he was young, and he was raised primarily by his father.[8] While Mr. Cliett had a happy childhood, and recalls it fondly, he was not well-off.[9] His father worked as a mechanic and his grandparents helped to raise him while his father worked.[10]

---

[8] ECF No. 174 at ¶78.
[9] *Id.*
[10] *Id.*

While in school, Mr. Cliett struggled. In elementary school, he was placed in special education classes, had an Individualized Education Plan (IEP), and was diagnosed with ADHD.[11] Mr. Cliett's struggles with school continued into his high school years and he ultimately dropped out without graduating.[12] His lack of a diploma, however, has not stopped Mr. Cliett from being gainfully employed. He has varied work history at entry-level positions at places like Goodwill, Little Cesear's, Burger King, Tree Top, and some experiences in construction and in factory work.[13] He remains productive currently and has been employed at Yakima Implement and Irrigation for just shy of one year.[14]

Mr. Cliett's criminal history paints a similar picture of a largely well-intentioned but somewhat irresponsible life. Indeed, outside of the offenses which make up the short series of exceptionally poor-decisions that led to the instant prosecution, Mr. Cliett's criminal history is compromised almost entirely of driving offenses—all of which occurred before he was 27 years old.[15] His only other criminal history is a municipal violation for possession of a Pitbull.[16] His history shifted notably in the weeks leading up to his arrest in this case.

---

[11] *Id.* at ¶92.
[12] *Id.* at p. 2.
[13] *Id.* at ¶¶94-97.
[14] *Id.* ¶94.
[15] *Id.* at ¶¶40-50.
[16] *Id.* at ¶ 51.

Sentencing Memorandum
– 5 –

This Court, however, is aware that despite Mr. Cliett largely staying out of legal trouble and remaining employed, his adult life has been tumultuous. Mr. Cliett has been married twice but has no children and is currently single.[17] He was in a fraught relationship with A.K. at the time the conduct underlying this offense occurred. Additionally, Mr. Cliett testified at length about his financial struggles. At trial, Mr. Cliett explained that he had inherited the house on 1215 South 6th Avenue.[18] This house had been built by Mr. Cliett's grandfather and had been in the family's possession since that time.[19] He had been giving his paychecks to his ex-wife and was under the impression she was paying the mortgage with it.[20] This turned out not to be the case and ultimately led to Mr. Cliett unsuccessfully filing for bankruptcy.[21] Unfortunately, the house was foreclosed on and sold.[22] This loss had a significant impact on Mr. Cliett.

While Mr. Cliett is not blameless in this situation, it helps contextualize and explain his struggles. Mr. Cliett is a man who means well, who tries his best, and his best has still led to less than perfect outcomes. That said, he continues to do his best. After losing his home, being charged in this case, and released on pretrial release, Mr.

---

[17] *Id.* at ¶81.
[18] ECF No. 159 (Trial Transcript – Day Two) at 256.
[19] *Id.*
[20] *Id.* at 265-66.
[21] *Id.* 266-67.
[22] *Id.* at 260.

Cliett has tried to rebound. He has maintained steady employment, he has resolved his state matters related to this case, and he has remained free from violations. This sentencing remains the last item to close out from that particularly tumultuous period in his life. Something he is prepared to move on from and to continue to do his best.

*The nature and circumstances of the offense*

Mr. Cliett has pleaded guilty to being a prohibited person in possession of a firearm. The day Mr. Cliett was arrested for the instant offense was the nadir of a particularly unfortunate number of weeks for Mr. Cliett. He understands the serious nature of the offense and takes full responsibility for his conduct. He knows that, going forward, under no circumstances is he to ever possess a firearm again. He is aware that, in many circumstances, domestic violence situations and firearms present a potentially deadly outcome. Fortunately for all involved, that was not the case here. At no point in time did A.K. ever imply, intimate, or suggest that Mr. Cliett ever had his hands on a firearm. There are no allegations that a firearm was involved in any way in any of the domestic situations at the home. To the contrary, all the evidence in this case points to the fact that the firearms were stored in a locked gun safe and played no part in the disputes between Mr. Cliett and A.K.

While Mr. Cliett recognizes that he has pleaded guilty to a serious offense, the difficult job of contextualizing the conduct is made clearer after a review of his conduct in the immediate aftermath and until present. Mr. Cliett's behavior on pretrial release

has cemented the fact that these few weeks were an aberration, not the norm. Mr. Cliett was released on November 16, 2022, and has remained continuously in the community since that time.[23] While he has been in the community, Mr. Cliett has worked to recover from the difficult position he found himself in in July of 2022. Not only has he complied flawlessly with his release conditions, Mr. Cliett has been steadily employed for the past approximately one (1) year, he has resolved all related state matters and, importantly, faced no new charges of any kind. Mr. Cliett's actions on pretrial release have shown that he appreciates and respects the seriousness of the crime to which he has pleaded guilty. He has demonstrated that he acknowledges the failings on his part and the need to pull out of the tailspin he was in. To his credit, he has done so without misstep.

> *The need for deterrence, to reflect the seriousness of the offense, protect the public, and avoid disparities*

A five-year probationary sentence will send a strong deterrent message to Mr. Cliett that adequately reflects the seriousness of the offense. Importantly, Mr. Cliett is keenly aware of the double-edged sword that a probationary sentence presents. While on the one hand it would permit him to remain out of custody, it is not a decision he makes lightly. He knows that should his probation be revoked, he will return to a

---

[23] ECF No. 19 (AO 199C).

plenary resentencing, where this Court will be empowered to sentence him how it sees fit. That situation could result in a substantial amount of jail time for Mr. Cliett, who has never before been incarcerated for any lengthy period. Indeed, the PSR reflects that the longest time he has ever been incarcerated was just five days.[24] A sentence of 27 months, let alone the exposure to the statutory maximum on plenary resentencing, will serve as a potent reminder to Mr. Cliett of the importance to continue to comply with his conditions of release.

A sentence of probation will also adequately punish Mr. Cliett and protect the public. As an initial matter, and as this Court is well aware, a probationary sentence is not a "slap on the wrist." The USPO will continue to supervise Mr. Cliett, and he will be required to check in periodically, provide proof of his continued abstinence from controlled substances, participate in any required mental health or substance use treatment, and submit his residence to random inspections by the USPO.[25] Again, even the slightest technical violation of the plethora of conditions of probation would subject Mr. Cliett to a new sentencing hearing.

Hand in hand, however, with the significant restrictions that accompany supervision is the protective nature of that supervision. Although Mr. Cliett has shown over the past 27 months of pretrial release, he does not present a danger to the

---

[24] ECF No. 174 at ¶49.
[25] *Id*. at 24-25.

community, further supervision for the next 60 months will help ensure that is the case. Any drug use would be detected; any police involvement would be discovered; any concerning behavior would be subject to questioning by a United States Probation Officer. In short, Mr. Cliett will be kept on a short leash for the next five (5) years to ensure that his pretrial performance was not a "fluke." Should any potential danger to the community be uncovered during the course of supervision, a probation officer would be uniquely positioned to respond quickly and seek Mr. Cliett's arrest. Accordingly, a probationary sentence affords significant protection to the community, even in a case where Mr. Cliett has been shown to have returned to his safe, law-abiding ways.

Finally, a probationary sentence avoids any *unwarranted* sentencing disparities. The JSIN data for the instant offense is less robust than it could be. Importantly, only 17 individuals between fiscal years 2017 and 2023 found themselves with the same CHC and Final Offense Level as Mr. Cliett.[26] While it does appear that all 17 individuals were incarcerated, the data is less persuasive than it could be with such few individuals. Further, and more importantly, the Guideline chapter at issue—§2K2.1—deals with the possession of firearms by many classes of prohibited individuals that includes individuals with felony convictions. Crucially, Mr. Cliett has never before

---

[26] *Id.* at 26.

been convicted of a felony, let alone a violent felony. The imperfect nature of JSIN data, however, does not allow us to inquire as to the criminal conduct of purportedly "similarly situated" defendants to analyze their respective sentences more granularly.

Regardless, the JSIN data is no more binding on this Court than the Guidelines themselves. Mr. Cliett's history and characteristics as well as the offense conduct itself provide bases for a *warranted* disparity from those 17 individuals in this case. Again, Mr. Cliett has never before been convicted of a felony and his criminal history has largely been limited to driving offenses. A short, roughly 10-day window led to all of Mr. Cliett's scorable criminal history and the charge to which he has pleaded guilty. This is unusual and solidifies the fact that this conduct was an aberration for Mr. Cliett. Again, providing a basis for a sentence outside of the guidelines, is Mr. Cliett's perfect compliance with pretrial supervision for nearly two and a half years.

Looking at the offense conduct itself, there has never been an allegation that Mr. Cliett used a firearm in any capacity related to domestic violence. While he appreciates that the mere presence of a firearm can give rise to concern, Mr. Cliett's possession of firearms appears to have been completely unrelated to the violation of a no contact order or any domestic violence situations. There is simply no need here to incarcerate Mr. Cliett. Rather, this Court should exercise its significant sentencing discretion to provide Mr. Cliett the opportunity for a probationary sentence.

*The need to provide for rehabilitation in the most effective manner*

A 60-month probation sentence will ensure that Mr. Cliett is able to access the programming he may need without removing him from the community, where he has shown himself to be a productive, responsible, and contributing member while on pretrial release.

Indeed, Mr. Cliett is uniquely positioned to receive the most effective and immediate rehabilitation services while in the community, rather than while incarcerated. As an initial matter, Mr. Cliett appears to be in a position where he may benefit from some substance use related programming. He began using marijuana at an early age and used regularly until his arrest in 2022.[27] He has also had short periods in time where he used cocaine and methamphetamine.[28] Fortunately, Mr. Cliett seems to have largely avoided serious setbacks with controlled substance use, but were he to be incarcerated, he would not likely receive much services to the extent they are necessary.

As this Court is well aware, Mr. Cliett would likely be denied the opportunity to participate in the BOP's Residential Drug Abuse Program (RDAP). Although Mr. Cliett would likely benefit from this intensive, 500-hour program, it is unlikely that he would be afforded the opportunity due to his pleading guilty to an offense that involved

---

[27] ECF No. 174 at ¶87.
[28] *Id.* at ¶¶88-89.

a firearm.[29] It is defense counsel's understanding that BOP gives priority to individuals eligible for early release, and, because he is ineligible due to his conviction, Mr. Cliett will not likely be able to participate. Considering the *thousands* of individuals on the waitlist, Mr. Cliett may not be given the chance, especially considering the relatively moderate sentence length recommended by the government.[30]

If sentenced to probation, Mr. Cliett would be well-positioned to receive an out-of-custody assessment at a local treatment center, which is currently recommended by the draft PSR.[31] If it is determined he needs services, Mr. Cliett would be able to begin immediately in the community. If he is sentenced to incarceration, Mr. Cliett would likely be detained locally and spend an unknown amount of time waiting to be transferred to a BOP facility before being presented with meaningful programming opportunities.

Relatedly, Mr. Cliett is in need of mental health services—something he has begun pursuing while in the community. With the assistance of defense counsel, Mr. Cliett has reached out to Comprehensive Healthcare in Yakima and is awaiting a call

---

[29] BOP Program Statement § 550.55(b)(5)(ii) (available at https://www.bop.gov/policy/progstat/5331_002.pdf) (noting that inmates convicted of an offense "that involved . . . possession . . . of a firearm" are not eligible to earn a sentence reduction.

[30] *Frequently Asked Questions about the RDAP*, FAMM, https://famm.org/wp-content/uploads/FAQ-Residential-Drug-Abuse-Program-5.3.pdf (last visited Mar. 17, 2023) (noting on page 2 that "[t]he BOP has estimated that thousands of people are on the waiting list" for RDAP).

[31] *See* ECF No. 174 at 25.

back when they have an appointment available for him. Again, should Mr. Cliett be incarcerated, he would likely be forced to wait to begin treatment services for an unknown period of time, rather than being able to begin in the immediate future if he is sentenced to a term of probation.

Finally, Mr. Cliett has expressed his desire to complete his GED.[32] Again, this is something that could be more immediately and more effectively addressed while in the community and serving a term of probation. Conditions are routinely imposed that require educational programming and there is no reason one could not be imposed in Mr. Cliett's case. Further, by allowing Mr. Cliett to obtain his GED while in the community, it will ensure that he is able to maintain his employment. Something at would almost certainly be lost should he be incarcerated.

In sum, Mr. Cliett's three greatest areas of need can be readily met while in the community. By addressing his areas of need locally, Mr. Cliett will be better positioned for long term success. He has shown that he is able to be a productive member of our community while on pretrial release, and his rehabilitative needs are not so dire that they must occur in a custodial setting. Instead, a probationary sentence will ensure that Mr. Cliett is not prevented from engaging in needed services longer than necessary.

---

[32] *Id.* at ¶93.

### III.     Conclusion

Mr. Cliett recognizes that in July of 2022, he was at a crossroads in his life. A series of exceptionally poor choices that month upturned his relatively quiet life, and his decisions led to Mr. Cliett being arrested multiple times, charged in federal court with a felony offense—the first in his life—and led to major changes in his day to day living. Mr. Cliett, however, rose to the challenges he made for himself. He has maintained perfect compliance with strict conditions of pretrial release. He has juggled his pretrial responsibilities with work and has maintained gainful employment for roughly the last year. He has resolved his pending state issues and worked to move on from this experience having learned an important lesson. Mr. Cliett is keenly aware that he will never be allowed to possess a firearm again and has shown that he is well-equipped to make the most of a probationary sentence.

In light of his perfect compliance on pretrial release, the aberrant nature of his conduct in July of 2022, the fact this is his first felony conviction, and after a full consideration of the 3553(a) factors, there is simply no reason for this Court to incarcerate Mr. Cliett at this point. For these reasons, and those described above, Mr. Cliett respectfully requests that the Court accept his sentencing recommendation and sentence him to five years' probation.

Dated: February 18, 2025.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Benjamin D. Cliett

s/ Nick Mirr
Nick Mirr, AT0014467
Iowa State Bar Ass'n
306 E. Chestnut Ave.
Yakima, Washington 98901
t: (509) 248-8920
nick_mirr@fd.org

Service Certificate

I certify that on February 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Michael J. A. Ellis.

s/ Nick Mirr
Nick Mirr, AT0014467
Iowa State Bar Ass'n
306 E. Chestnut Ave.
Yakima, Washington 98901
t: (509) 248-8920
nick_mirr@fd.org